IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN PASCARELLO, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | NO. 18-3406 |
| NANCY A. BERRYHILL,<br>Acting Commissioner of<br>Social Security, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

Susan Pascarello ("Pascarello" or "Plaintiff") seeks review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of Social Security's ("Commissioner") decision denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] For the reasons that follow, Pascarello's Request for Review will be denied.

**I.   PROCEDURAL HISTORY AND BACKGROUND**

Pascarello was born on January 13, 1958. R. at 21.[2] She has at least a high school education and is able to communicate in English. Id. She has previous work experience as a bus operator and dispatcher. Id. at 20. On February 24, 2015, Pascarello protectively filed applications for DIB pursuant to Title II of the Social Security Act ("the Act") and for SSI pursuant to Title XVI of the Act. Id. at 10. She alleged that she had become disabled on

---

[1]   In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment. See Doc. Nos. 13, 18, 19.

[2]   Citations to the administrative record will be indicated by "R." followed by the page number.

December 2, 2012 due to an anxiety disorder, ankle problem and short-term memory loss. Id. at 112-13. Her applications were initially denied on May 29, 2015. Id. at 10. Pascarello then filed a written request for a hearing on July 2, 2015. Id. A hearing before an Administrative Law Judge ("ALJ") was held on April 5, 2017, id. at 39-111, at which time she amended her disability onset date to December 29, 2013, id. at 43. On July 13, 2017, the ALJ issued an opinion finding that Pascarello was not disabled. Id. at 7-28. Pascarello filed a timely appeal with the Appeals Council on August 9, 2017. Id. at 189-90. On June 11, 2018, the Appeals Council denied Pascarello's request for review, thereby affirming the decision of the ALJ as the final decision of the Commissioner. Id. at 1-6. Pascarello then commenced this action in federal court.

## II.     THE ALJ'S DECISION

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A). As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot

2

make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920 (references to other regulations omitted).

In her decision, the ALJ found that Pascarello suffered from the following severe impairments: post-traumatic stress disorder ("PTSD"), obesity and arthritis. R. at 12. The ALJ did not find that any impairment, or combination of impairments, met or medically equaled a listed impairment and determined that Pascarello retained the residual functional capacity ("RFC") to:

> [P]erform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she can only frequently reach, handle and finger. She can occasionally perform postural maneuvers. She can never climb ladders, ropes or scaffolds. She can tolerate only brief, goal-directed interactions with the public, up to no more than an occasional basis throughout the eight-hour workday. She can work in proximity to others but with no more than occasionally tandem or teamwork with co-workers on the same task.

Id. at 15. Based on this RFC determination, the ALJ concluded that Pascarello was able to perform her past relevant work as a dispatcher. Id. at 20. In the alternative, relying on the vocational expert ("VE") who appeared at the hearing, the ALJ found that there were also jobs that existed in significant numbers in the national economy that Pascarello could perform, such as a cleaner, packer or assembler. Id. at 22. Accordingly, the ALJ concluded that Pascarello was not disabled. Id.

### III. PASCARELLO'S REQUEST FOR REVIEW

In her Request for Review, Pascarello contends that the ALJ's RFC determination was not supported by substantial evidence because: (1) the ALJ improperly discounted the opinions of the treating physician, Dr. Nathaniel Abramson, D.O., and consultative examiner, Dr. Pramod Digamber, M.D.; and (2) the ALJ failed to properly explain the mental health limitations in the RFC after giving the opinion of the psychiatric consultative examiner, Dr. Joseph Primavera,

Ph.D., only partial weight.

IV. **DISCUSSION**

   A. **Social Security Law**

The role of the court in reviewing an administrative decision denying benefits in a Social Security matter under 42 U.S.C. § 405(g) is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001); see also Richardson v. Perales, 402 U.S. 389, 401 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (Substantial evidence "'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988))). A reviewing court may not undertake a de novo review of the Commissioner's decision in order to reweigh the evidence. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986). The court's review is plenary as to the ALJ's application of legal standards. Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

   B. **The ALJ Did Not Err in Evaluating the Opinions of Drs. Abramson and Digamber**

Pascarello contends that the ALJ's RFC assessment was not supported by substantial evidence because the ALJ did not properly evaluate the opinions of her treating physician, Dr.

Abramson, or her consultative examiner, Dr. Digamber. Pl.'s Br. (Doc. No. 12) at 11-19. This argument lacks merit.

Under the applicable regulations and controlling case law,[3] "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)); accord 20 C.F.R. § 416.927(c)(2). A treating physician's opinion on the nature and severity of a claimant's impairment will be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If an ALJ does not afford a treating physician's opinion controlling weight, he or she may instead give it "more or less weight depending upon the extent to which supporting explanations are provided." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Factors to be considered by the ALJ in assigning appropriate weight to a medical opinion include the following: the length of the treating relationship and frequency of examination; the nature and extent of the treating relationship; supportability; consistency; specialization; and other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

In rejecting a physician's assessment, however, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000) (internal quotation marks omitted). An ALJ must explain on the record

---

[3] The Social Security Administration amended its regulations regarding how to assess treating source opinions for claims filed on or after March 27, 2017. See 82 F.R. 5844, 5869 (Jan. 18, 2017); see also 20 C.F.R. §§ 404.1520c, 416.920c. Because Pascarello's claims were filed on February 24, 2015, see R. at 10, the new rules do not apply here.

his or her reasons for disregarding a physician's opinion. Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986). While it is essential that an ALJ set forth reasons for his or her decision, an ALJ is not required to use particular language or adhere to a specific formula or format in conducting the analysis. Jones, 364 F.3d at 505. The ALJ need only provide a "'discussion of the evidence' and an 'explanation of reasoning' for his [or her] conclusion sufficient to enable meaningful judicial review." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009) (quoting Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20 (3d Cir. 2000)). Here, the ALJ provided an adequate explanation of her bases for affording limited weight to the opinions of Pascarello's treating physician, Dr. Abramson, and consultative examiner, Dr. Digamber, and the record demonstrates that her decision was supported by substantial evidence.

1. **Dr. Abramson**

Dr. Abramson completed a Physical Assessment Form on April 7, 2017. R. at 724-25. He diagnosed Pascarello with gastric lymphoma, degenerative joint disease, spinal stenosis, "COPD" and "GERD."[4] Id. at 724. Dr. Abramson opined that these conditions "constantly" interfered with the "attention & concentration required to perform simple work-related tasks" and that they caused dizziness and cognitive impairments. Id. Dr. Abramson also determined that Pascarello could only walk one-half of a city block without rest or significant pain and could only sit for two hours and stand or walk for two hours in an eight-hour workday. Id. Dr. Abramson indicated that Pascarello could never lift or carry more than 10 pounds, but did not have limitations in doing repetitive reaching, handling, or fingering. Id. Finally, Dr. Abramson concluded that Pascarello would likely be absent from work more than four times a month as a

---

4   Dr. Abramson listed another diagnosis on the form, but it is illegible. R. at 724.

result of her impairments.  Id. at 725.

The ALJ accorded Dr. Abramson's opinion "little weight," explaining that the "opinion is of very limited probative value as Dr. Abramson is considering the impact of the gastric lymphoma, which had resolved by late 2016, but which caused significant fatigue during treatment."  Id. at 19.  Moreover, the ALJ noted that the walking, standing, and sitting limitations in Dr. Abramson's opinion had "no musculoskeletal basis in [his] treatment records."  Id.

Despite Pascarello's contention to the contrary, the ALJ's decision to afford Dr. Abramson's opinion little weight is supported by substantial evidence.  The ALJ thoroughly reviewed and summarized Pascarello's treatment records from Abramson Medical Associates. Id. (citing id. at 328-33, 599-708).  As the ALJ explained, the record does not contain any treatment records from 2013 or 2014 other than a brief hospitalization for acute bronchitis and a vaccine reaction.  Id. at 18, 316, 328-33.  The majority of the records from Dr. Abramson relate to Pascarello's treatment of gastric lymphoma, which was diagnosed in February 2016.  Id. at 601-07.  Pascarello underwent a course of radiation therapy for the gastric lymphoma from approximately July 2016 through August 2016.  See id. at 684-85.  Although Pascarello indicated that she experienced weakness and decreased energy during her treatment, id. at 71-72, she was repeatedly reported to have been doing well after.[5]  See, e.g., id. at 72, 664-71, 685.  For example, on September 8, 2016, after the completion of her radiation treatment, it was noted that "[s]he feels well," and she had no edema or tenderness during her musculoskeletal examination.

---

[5]  Notably, the ALJ concluded that Pascarello's gastric lymphoma did not qualify as a severe impairment, R. at 13, a finding that Pascarello does not appear to challenge.  Specifically, the ALJ determined that Pascarello's lymphoma was "non-severe for purposes of this decision, as there is no evidence that this condition me[t] the 12-month durational period" and Pascarello "alleged no ongoing issues."  Id.

7

Id. at 685-86. On September 29, 2016, her oncologist reported that Pascarello was "doing well and offers no complaints." Id. at 498. Apart from her gastric lymphoma, Pascarello's diagnostic tests showed normal or only "mild" or "slight" findings. Id. at 18; see also id. at 319, 322, 324, 626, 637, 639-45. For example, x-rays completed in 2012 revealed "[n]o fracture and no dislocation" of her right forearm, id. at 320, 639, see also id. at 640; no acute injury, preserved joint spaces, and unremarkable soft tissues of her right knee, id. at 322, 641; normal right elbow, id. at 323, 642; and normal right hip, id. at 324, 643. A November 2014 DEXA scan revealed "[m]ild osteopenia." Id. at 319, 637. A June 15, 2015 x-ray of her feet indicated that Pascarello had an "[o]ld healed avulsion fracture of distal right fibula." Id. at 626; see also id. at 629-30. That same report stated that she had "[n]o acute fracture or dislocation[,] [m]inimal degenerative change at first MTP joints[,] and [s]mall plantar heel spurs." Id. at 626. Ultimately, as the ALJ noted, Pascarello "is not awaiting surgery, she is not in physical therapy, she is not in formal pain management treatment, and is not getting injections." Id. at 18.

Pascarello argues that the ALJ should defer to Dr. Abramson's opinion because he "has the longest treating relationship with [Pascarello] of any medical provider in the record." Pl.'s Br. at 14. Length of the treatment relationship, however, is only one of the factors that an ALJ applies in determining the weight to give a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Other factors include nature and extent of the treatment relationship, supportability, consistency and specialization. Id. Where a physician fails to provide an explanation supporting his or her opinion, that "by itself would justify the ALJ's decision to accord [it] little weight." Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 119 (3d Cir. 2012); see also Phillips v. Barnhart, 91 F. App'x 775, 780 (3d Cir. 2004) (finding that the ALJ properly assigned limited weight to a treating physician's opinion when his "treatment notes, and in particular the

8

treatment notes during the [relevant period], d[id] not support a finding that [plaintiff] was disabled at any time"); Plummer, 186 F.3d at 429 (treating physician's opinion may be given "more or less weight depending upon the extent to which supporting explanations are provided"). Additionally, as was the case here, "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank, are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). Although Pascarello argues that there is nothing indicating that Dr. Abramson's opinion was limited to her gastric lymphoma, the records do not support that she suffered from another impairment during the relevant time period that limited her to the extent documented in Dr. Abramson's opinion. As described by the ALJ, the treatment notes do not support that she was "consistently or chronically" limited in her physical capabilities during the relevant period. See R. at 18.

Pascarello also argues that the Dr. Abramson's opinion was supported by her subjective complaints of pain as well as the consultative opinion of Dr. Digamber. Pl.'s Br. at 14. Here, however, the ALJ found that Pascarello's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence." R. at 17. Although Pascarello presented with a cane during the hearing, the ALJ explained that the medical records did not document "such difficulty ambulating such that the claimant require[d] a walker, as alleged by the claimant." Id. at 19. Indeed, the medical records did not contain any indication that a cane or walker was ever prescribed aside from the brief use of a CAM walker boot. Id. Moreover, as discussed infra in Section IV(B)(2), the opinions of Drs. Abramson and Digamber did not support one another, as both the diagnoses and limitations in each opinion differed. Compare id. at 340-45, with id. at 724-25.

In this case, the ALJ thoroughly outlined Pascarello's medical history and explained why

9

she discounted the opinion of Dr. Abramson. The treatment records confirm that the ALJ's description was an accurate one, and her conclusion that the treatment notes did not support the significant limitations in sitting, standing, walking, and lifting is supported by substantial evidence.

### 2. **Dr. Digamber**

Dr. Digamber performed an internal medicine consultative examination on May 19, 2016. Id. at 336-39. He reported that Pascarello indicated that she had a history of anxiety, depression, PTSD, and memory loss for approximately four to five years. Id. at 336. He also stated that she reported a "history of right ankle fracture in 01/15 which healed very well" as well as "osteoporosis in 11/14 and also osteoarthritis in the right hip in 2014." Id. Pascarello reported "occasional mild pain in the right hip exacerbated [by] walking or standing for an extended period of time," but the "pain is relieved by over-the-counter pain medications." Id. Dr. Digamber noted that Pascarello did not appear to be in any acute distress at the examination. Id. at 337. Her gait was normal and she could walk on her heels and toes without difficulty. Id. Her squatting was limited to 50 percent due to hip pain, but her stance was normal and she used no assistive devices. Id. She did not need any help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. Id. She had no scoliosis, kyphosis, or abnormality in the thoracic spine. Id. at 338. Her straight leg raise was negative bilaterally. Id. She had no evidence of joint deformity, redness, heat, or effusion, and her joints were stable and nontender. Id. Her strength was "5/5" in the upper and lower extremities. Id. She had no cyanosis, clubbing, edema, significant varicosities, or trophic changes, and no muscle atrophy was evident. Id. Dr. Digamber diagnosed Pascarello with: (1) history of anxiety, depression, PTSD, and memory loss; (2) past history of fracture of the right ankle; (3) history of

osteoarthritis in the right hip; and (4) history of osteoporosis. Id. Her prognosis was listed as "good." Id.

Dr. Digamber completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). Id. at 340-45. He opined that Pascarello could frequently lift and carry up to 10 pounds, occasionally lift and carry up to 20 pounds, but never lift or carry greater than 20 pounds. Id. at 340. He determined that Pascarello could sit for six hours, stand for two hours, and walk for one hour in an eight-hour workday. Id. at 341. She did not require the use of a cane to ambulate. Id. Pascarello could frequently reach, handle, finger, feel, and push or pull, and frequently operate foot controls. Id. at 342. She could occasionally climb stairs, ramps, ladders, or scaffolds; balance; stoop; kneel; crouch; and crawl. Id. at 343. Dr. Digamber further opined that she could tolerate occasional exposure to unprotected heights; moving mechanical parts; operating a motor vehicle; humidity and wetness; dust, odors, fumes, and pulmonary irritants; extreme cold or heat; and vibrations. Id. at 344. Finally, Dr. Digamber concluded that Pascarello could perform activities like shopping; travel without a companion for assistance; ambulate without using a wheelchair, walker, or two canes or crutches; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace without the use of a single hand rail; prepare a simple meal and feed herself; care for her personal hygiene; and sort, handle, and use paper and files. Id. at 345.

The ALJ afforded Dr. Digamber's opinion "limited weight," explaining that "[t]he examination [wa]s essentially normal and the clinical signs and symptoms documented by Dr. Digamber do not support such reduced exertion level (i.e., range of light exertion), and such limitations are certainly not supported by [Pascarello's] treatment notes . . . which contain no complaints of hip pain." Id. at 18.

11

As an initial matter, a consultative examiner's opinion is never entitled to controlling weight. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Moreover, as explained by the ALJ, Dr. Digamber's limitations were not supported by the results of the consultative examination. Dr. Digamber's physical examination of Pascarello was essentially normal. R. at 337. The only restriction noted by Dr. Digamber was that Pascarello's "squatting was limited to 50 percent due to hip pain." Id. However, as the ALJ made clear, Pascarello's treatment notes did not contain a record of complaints of hip pain, id. at 18, and Pascarello herself informed Dr. Digamber that her hip pain was "occasional" and "mild" and that it was "relieved by over-the-counter pain medications," id. at 336. Dr. Digamber's diagnoses did not indicate that Pascarello was presently suffering from any impairments. See id. at 338 (diagnoses include: (1) "**History** of anxiety, depression, PTSD, and memory loss;" (2) "**Past history** of fracture of the right ankle;" (3) "**History** of osteoarthritis in the right hip;" and (4) "**History** of osteoporosis." (emphasis added)). It is firmly-established law that when a medical opinion is not supported by the claimant's medical records, an ALJ is not required to give it significant weight. See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 148 (3d Cir. 2007) ("A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC."). Accordingly, the ALJ's decision to accord Dr. Digamber's opinion only limited weight is supported by substantial evidence.

Pascarello contends that, by rejecting the limitations imposed in the opinions of Drs. Abramson and Digamber, the ALJ improperly substituted her own lay opinion. However, determining a claimant's RFC is the province of the ALJ and not of the treating physician or consultative examiner. It is well settled that an RFC assessment is not a medical assessment, but rather an administrative finding that is reserved to the ALJ. 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2); SSR 96-5p, 1996 WL 374183 (July 2, 1996). An ALJ is required to conduct an independent analysis of the relevant evidence and to reach his or her own determination regarding the claimant's RFC. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011); 20 C.F.R. §§ 404.1545, 416.945. As the United States Court of Appeals for the Third Circuit has articulated:

> The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. See 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, see, e.g., 20 C.F.R. § 404.1527(d)(1)-(2), "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."

Chandler, 667 F.3d at 361 (quoting Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011)). Thus, the ALJ's role is not merely to choose between the opinions of various medical sources. "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); see also Chandler, 667 F.3d at 362 (ALJ could extrapolate based on the evidence of record because every fact incorporated in an RFC does not need to have been found by a medical expert); Butler v. Colvin, No. 3:15-CV-1923, 2016 WL 2756268, at 13 n.6 (M.D. Pa. May 12, 2016); Cummings v. Colvin, 129 F. Supp. 3d 209, 214-17 (W.D. Pa. 2015); Doty v. Colvin, No. 13-80-J, 2014 WL 29036, at *1 n.1 (W.D. Pa. Jan. 2, 2014).

Ultimately, "[a] lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC." Salles, 229 F. App'x at 148. It was Pascarello's burden to produce evidence regarding her own medical condition at the RFC evaluation stage. Roberts v. Colvin, No. 2:14-cv-04847, 2016 WL 5720609, at *7 (E.D. Pa. Sept. 30, 2016). In this case, the ALJ's decision to confine Pascarello to a limited range of

medium work was supported by substantial evidence. See Salerno v. Comm'r of Soc. Sec., 152 F. App'x 208, 209-10 (3d Cir. 2005); Hudson v. Comm'r of Soc. Sec., 93 F. App'x 428, 431 (3d Cir. 2004).[6]

### C. The ALJ's Evaluation of the Opinion of Dr. Primavera Is Supported by Substantial Evidence

Pascarello argues that the RFC was also not supported by substantial evidence because, "after affording the opinion of Dr. Primavera partial weight, the ALJ failed to explain the weight afforded and her reasons for incorporating only certain portions of the identified limitations into the RFC." Pl.'s Br. at 19. This claim is plainly meritless.

Dr. Primavera performed a psychiatric consultative evaluation on May 19, 2015. R. at 348-52. During the evaluation, Pascarello informed Dr. Primavera that in 2004, while she was employed by SEPTA, she was assaulted when an individual attempted to steal a bus. Id. at 348. Pascarello reported that as a result of that incident, she had memory loss and PTSD. Id. Dr. Primavera noted that Pascarello had "never been in a psychiatric hospital nor has she ever received outpatient behavioral health treatment." Id. Dr. Primavera conducted a mental status examination in which he noted that Pascarello was cooperative and her social skills and overall presentation were adequate. Id. at 349. Her mode of dress was appropriate, neat, and casual; her personal hygiene was well-groomed; her posture and motor behavior were normal; and her eye contact was appropriate. Id. Her speech was fluent and her quality of voice was clear. Id. Her expressive and receptive languages were adequate. Id. Dr. Primavera noted that her thought

---

[6] To the extent Pascarello argues that the ALJ may have based her RFC determination upon the opinion of the single decision-maker ("SDM"), see Pl.'s Br. at 18, the ALJ expressly concluded with respect to Pascarello's physical impairments that "[t]here is no State agency medical consultant opinion to weigh or consider," R. at 20 (citing id. at 112-33). Moreover, the ALJ found Pascarello to be more limited than the SDM, as she included postural and manipulative limitations not included by the SDM. Compare id. at 15, with id. at 117.

14

processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting. Id. at 350. Her affect was depressed and anxious and her mood was dysthymic. Id. She was oriented to person, place and time. Id. Dr. Primavera also assessed her attention and concentration, noting that she was able to count from one to 10 and perform simple calculations, but was unable to complete serial 3s counting back from 20. Id. Dr. Primavera evaluated Pascarello's recent and remote memory skills as well, noting that she was able to recall three out of three objects immediately, but only two out of three objects after delay. Id. She was able to repeat six digits forward and three digits backwards. Id. Dr. Primavera noted that her cognitive functioning appeared to "fall in the average range" and her "[g]eneral fund of information appeared to be appropriate to experience." Id. Moreover, both her insight and judgment "[a]ppeared good." Id. Dr. Primavera diagnosed her with PTSD, "by history with mild impairment to attention and concentration and memory that may be related to anxiety or concussion as reported by claimant." Id. at 351. Dr. Primavera recommended that Pascarello "become engaged in outpatient behavioral health treatment to include both psychological support and psychiatric consultation." Id. He noted that Pascarello's prognosis was "[g]uarded given [that Pascarello] [wa]s not active [in] behavioral health treatment." Id.

Dr. Primavera also completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)." Id. at 353-55. He opined that Pascarello had only mild restrictions in her ability to understand, remember, and carry out simple instructions, and the ability to make judgments on simple work-related decisions. Id. at 353. She had moderate restrictions in her ability to understand, remember, and carry out complex instructions and the ability to make judgments on complex work-related decisions. Id. Dr. Primavera opined that Pascarello had marked restrictions in interacting appropriately with the public and moderate

15

restrictions in her ability to interact appropriately with supervisors and coworkers and to respond appropriately to usual work situations and to changes in a routine work setting. Id. at 354. Dr. Primavera found that no other capabilities were affected by her impairments. Id. The ALJ accorded this opinion "partial weight in view of the actual treatment notes from Tree of Life that show more activity and that show more periods where the claimant is stable." Id. at 19.

Pascarello argues that the ALJ did not properly explain the weight afforded and her reasons for incorporating only certain portions of the identified limitations into the RFC. As an initial matter, an ALJ is not required to adopt all limitations in a medical opinion, even if the ALJ affords the medical opinion significant weight. Wilkinson v. Comm'r of Soc. Sec., 558 F. App'x 254, 256 (3d Cir. 2014). Here, the ALJ afforded Dr. Primavera's opinion only partial weight. R. at 19. Pascarello argues that the ALJ improperly omitted restrictions in her RFC related to her "ability to sustain concentration and attention and in her ability to appropriately interact with the general public." Pl.'s Br. at 21-22. The ALJ, however, expressly included in the RFC that Pascarello could "tolerate only brief, goal-directed interactions with the public, up to no more than an occasional basis throughout the eight-hour workday." R. at 15. With respect to Pascarello's ability to sustain concentration and attention, the ALJ summarized that her treatment records from her behavioral health provider, Tree of Life, document that she was generally "stable" and goal-directed and her cognition was intact. Id. at 14, 17 (citing id. at 363-437). Moreover, treatment notes between July 2015 and December 2016 record that Pascarello had logical cognition with no noted evidence of impairment or difficulty with attention, concentration, persistence or pace. See id. at 365, 367-68, 370, 372, 374, 376, 378, 380, 382, 384-85, 387-89, 392-94, 396, 398, 403-04, 409, 410. Even during periods of depression, Pascarello was "well-focused" and "able to stay on focus." Id. at 385, 387-88, 391, 394, 396,

16

398-99, 401, 404, 406, 408, 410. Moreover, her mental health treatment records reflect that Pascarello went on trips, helped out family members and drove them around, helped with her grandchildren and was "very busy." Id. at 389, 394, 397, 407.

Based on the foregoing, the ALJ did conclude that Pascarello had a severe mental health impairment of PTSD, see id. at 13, and the ALJ accounted for her mental health impairment by including limitations in her social interactions in her RFC, id. at 18. Pascarello's RFC restricted her to "tolerat[ing] only brief, goal-directed interactions with the public, up to no more than an occasional basis throughout the eight-hour workday" and "work[ing] in proximity to others but with no more than occasionally tandem or teamwork with co-workers on the same task." Id. at 15. Once again, the ALJ adequately explained her findings, and Pascarello has failed to carry her burden to show that those RFC limitations were not supported by substantial evidence.[7]

## V.     CONCLUSION

For the reasons set forth above, I find that the ALJ's findings are supported by substantial evidence. Accordingly, Plaintiff's Request for Review is denied. An appropriate Order follows.

Dated: May 28, 2019

---

[7] Pascarello argues that, "according to the VE, if an individual with the ALJ's identified RFC and [Pascarello's] past work experience, age and education were further limited . . . to simple, routine work, all of [Pascarello's] past relevant work would be eliminated." Pl.'s Br. at 23 (citing R. at 85). Here, however, the ALJ made an alternative step-five finding identifying unskilled jobs that Pascarello would be able to perform at the SVP 2 level, which would be equivalent to simple, routine tasks. R. at 22; see also Money v. Barnhart, 91 F. App'x 210, 215 (3d Cir. 2004) (determining that a reasoning level of SVP 2 does not contradict a restriction to simple, routine, and repetitive tasks). Therefore, to the extent Pascarello argues that the ALJ improperly omitted restrictions that would accommodate moderate limitations in her ability to sustain concentration and attention, see Pl.'s Br. at 21-22, those limitations were adequately accounted for in the ALJ's alternative step-five finding. See, e.g., Menkes v. Astrue, 262 F. App'x 410, 412-13 (3d Cir. 2008) (concluding limitation to "simple, routine tasks" sufficiently captured the plaintiff's moderate limitations in concentration, persistence or pace).

BY THE COURT:

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE